IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:24-CV-00097-RN

**Christopher Patrick,**

                      Plaintiff,

v.

**Frank J. Bisignano,** Commissioner of
Social Security,[1]

                    Defendant.

**Memorandum & Order**

      Plaintiff Christopher Patrick challenges an Administrative Law Judge's decision to deny his application for social security income. Patrick claims that the ALJ made four errors in reaching that determination. First, the ALJ erred in evaluating the medical opinion evidence. Second, he failed to properly find that Patrick's diplopia was a severe impairment at step two. Next, the ALJ erred in determining Patrick's residual functional capacity (RFC) by failing to account for visual and nonexertional limitations. And fourth, the ALJ erred in identifying other jobs that Patrick could perform. Both Patrick and Defendant Frank Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 12, 14, 15.

      After reviewing the parties' arguments, the court has determined that the ALJ reached the appropriate determination. The undersigned finds no error in the ALJ's consideration of the medical opinions. Patrick has failed to establish that he has a severe visual impairment, so the RFC determination required no additional limitations addressing visual restrictions. The RFC addresses any deficits Patrick has in adapting or managing himself. And there is no conflict between the RFC

---

[1] The court substitutes Frank J. Bisignano for the former defendants. *See* Fed. R. Civ. P 25(d).

and the jobs identified at step five. So the court grants Bisignano relief, denies Patrick relief, and affirms the Commissioner's determination.[2]

## I.     Background

### A.     Factual

In July 2022, Patrick was in a motor vehicle accident. Tr. at 27. He fractured his left femur and x-rays also degenerative changes in his left knee. *Id.* Patrick also suffered a traumatic brain injury with intracerebral hemorrhage. *Id.* He was discharged after several weeks in the hospital. Tr. at 325.

In October, Patrick underwent a consultative examination with Leslie Dupree, FNP. Tr. at 27. Records reflect slurred speech and double vision. Tr. at 525. On examination, he showed diminished strength in his extremities, as well as tenderness and reduced range of motion in his left leg. Tr. at 27. Patrick used a cane, had an antalgic gait, and showed reduced grip strength, although he could make a fist and touch his fingers to his thumbs. *Id.*

Dupree determined that Patrick would have mild limitations sitting and moderate limitations lifting, carrying, standing or walking for prolonged periods, performing postural carrying out manipulative activities. Tr. at 29, 529. But he had no visual or communicative limitations, but he needed a can to ambulate. Tr. at 29, 530.

At other medical appointments, providers noted that he had a normal gait. Tr. at 27. Patrick complained of pain in his left leg, which showed tenderness at a visit later that month. *Id.*

Patrick also reported issues with his back. Imaging studies showed multilevel cervical spondylosis, unconvertable multilevel hypertrophy, and degenerative changes. *Id.* Treatment notes

---

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 7, 17.

tenderness and reduced range of motion in his upper extremities. *Id.* Other records showed physical examinations of his back were normal. *Id.*

In November, Patrick saw an ophthalmologist for issues with double vision that began after his accident. Tr. at 22. He had normal visual fields and a corrected bilateral acuity of 20/20. *Id.*

Patrick also alleged mental health issues. During his hospitalization, he displayed a normal mood and affect. Tr. at 28. In November 2022, Patrick had a consultative psychological evaluation with Barbara Galloway, M.A. *Id.* Records show he was anxious and reported issued with worry and racing thoughts. *Id.* Although he had a history of alcohol use and tested positive for cocaine at the time of his accident, Patrick stated that he had stopped using any substances. *Id.* And testing revealed borderline intellectual functioning, a below average fund of knowledge, and an extremely low range of memory. *Id.*

Galloway concluded that Patrick would have no trouble understanding instructions, sustaining attention to perform simple, repetitive tasks, or relating to others. Tr. at 30. But he would have difficulty retaining and following instructions and tolerating the stress of daily work. *Id.*

A state agency physician found that Patrick could perform light work with restrictions on his postural movements and environmental conditions. Tr. at 29. A state agency psychological consultant concluded that since his accident, Patrick had no limitations interacting with others, mild limitations in maintaining concentration, persistence, or pace, and moderate limitations in understanding, remembering, and applying information and adapting or managing himself. Tr. at 30. He could understand, remember, and follow simple instructions, sustain attention to complete simple, routine, and repetitive tasks in a 2-hour period at a non-production pace, and complete a normal workweek. *Id.* And Patrick could adapt to changes in a position that was not highly production oriented or socially demanding. *Id.*

Patrick testified that he has a bad back, which is thrown out two or three time a month. Tr. at 26. As a result of his accident, he claimed to suffer pain in his head, shoulders, and lower left extremity. *Id.* Patrick estimated he could walk 30 to 60 yards and lift no more than 15 pounds. *Id.*

Patrick also testified that he had problems with concentration and short-term memory. *Id.* He would forget how to do a task 15 minutes after it was explained. Tr. at 26–27. And Patrick disliked being around more than a few people. Tr. at 27.

### B. Procedural

In June 2021, Patrick applied for supplemental security income alleging a disability that began two years earlier.[3] After the Social Security Administration denied his claim at the initial level and upon reconsideration, Patrick appeared for a telephonic hearing before an ALJ to determine whether he was entitled to benefits. The ALJ determined he had no right to benefits because he was not disabled. Tr. at 19–32.

The ALJ found that Patrick lived with several severe impairments. Tr. at 21. These included substance use disorder, neurocognitive disorder, anxiety disorder, status post motor vehicle accident[4] lower left extremity fracture and brain/head injury, degenerative disc disease, and degenerative joint disease. *Id.* The ALJ also found that Patrick's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 22.

Next, the ALJ determined that Patrick had the residual functional capacity (RFC) to perform light work with limitations. Tr. at 25–26. He can frequently use his upper extremities to push, pull, operate hand controls, handle, finger, and feel. *Id.* Patrick can occasionally use his lower

---

[3] He later amended his alleged onset date to the day of his application.

[4] The accident happened about one year after his application.

extremities to push, pull, and operate foot controls. *Id.* And he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. *Id.* But Patrick cannot climb ladders, ropes, or scaffolds. *Id.*

Patrick must avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous, moving machinery. *Id.* He can understand and perform simple, routine, repetitive tasks. *Id.* Patrick can maintain concentration, persistence, and pace to stay on task for two-hour periods over the course of an eight-hour workday, with normal breaks. *Id.* He requires a low-stress work setting, which means no production-pace or quota-based work but instead a goal-oriented job primarily dealing with things rather than people. *Id.*

Patrick can occasionally interact with coworkers and supervisors, but he cannot work with the public as part of the jobs, such as sales or negotiations, but this does not preclude incidental contact with the public. *Id.* He can have only occasional changes in the work setting. *Id.* And Patrick requires a sit/stand option allowing his to change positions every 30 minutes. *Id.*

The ALJ then determined that Patrick had no past relevant work. Tr. at 31. But considering his age, education, work experience, and RFC, the ALJ found that other jobs existed in significant numbers in the national economy that Patrick could perform. Tr. at 31–32. These included marker, routing clerk, and router. *Id.* These findings led the ALJ to conclude that Patrick was not disabled. Tr. at 31.

After unsuccessfully seeking review by the Appeals Council, Patrick commenced this action in July 2024. D.E. 1. Both parties seek a decision in their favor. D.E. 12, 14, 15.

## II. Analysis

Patrick argues that the ALJ erred in evaluating two medical opinions because he offered an unsound basis in finding they were only partially persuasive and failed to incorporate some limitations they assessed. But case law supports an ALJ's basis to discount a medical opinion that uses undefined terms to assign restrictions. And an ALJ has no obligation to adopt limitations in an opinion that he only endorsed in part.

Patrick also argues that his diplopia is a severe impairment. The evidence, however, supports the ALJ's conclusion that this condition was not severe, so his residual functional capacity (RFC) required no visual limitations. The ALJ included nonexertional limitations that address limitations Patrick has in adapting or managing himself. And there is no conflict between his RFC and the jobs the Vocational Expert identified at step five, all of which have a reasoning level of two.

Finding no error, the court will affirm the Commissioner's determination.

### A. Standard for Review of the Commissioner's Final Decision

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

**B.**     **Standard for Evaluating Disability**

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id.*

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id.*

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is unwarranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then

"express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id.*

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.    Medical Opinion Evidence

Patrick contends that the ALJ failed to properly consider medical opinions from Galloway and Dupree. The Commissioner maintains that the ALJ properly evaluated all medical opinions. The court finds no error in the ALJ's consideration of the medial opinions.

The Regulations direct the ALJ to consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities ...

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace;

carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1520(a)(2), 416.913(a)(2).

The Regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors:

(1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion."

*Id*. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain their consideration of the other factors but need only do so when contrary

9

medical opinions are equally persuasive in terms of both supportability and consistency. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *Id.*

The Regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* §§ 404.1520c(b), 416.920c(b). But when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

### 1. Galloway

Galloway found that Patrick would have no issues understanding instructions, sustaining attention to perform simple and repetitive tasks, or relating to others. Tr. at 30. But she determined that he would have difficulty retaining and following instructions and tolerating the stress of daily work. *Id.*

The ALJ found this opinion partially persuasive. *Id.* Examination findings showing anxiety, impaired memory, and low average range of intellectual functioning generally supported her conclusions. *Id.* But Patrick was also alert and cooperative with logical thought processes. *Id.* Galloway's opinion also followed the state agency consultant's assessment. Tr. at 30–31.[5] The ALJ also remarked that Galloway's opinion was vague to the extent it states Patrick "would have difficulty" with certain things. Tr. at 31. And the record did not support her limitations on his interactions with others. *Id.*

---

[5] The state agency reviewer found that Patrick could understand, remember, and follow simple instructions; sustain attention to complete simple, routine, and repetitive tasks for a 2-hour period at a non-production pace, and complete a normal workweek; and adapt to changes associated with simple routine tasks in a stable work environment with no high production or social demands. Tr. at 30.

### a. Evidence Challenging Assessment

Patrick challenges the ALJ's evaluation of this medical opinion, arguing that he failed to identify evidence that conflicts with it. He claims that Galloway's opinion should have been considered "persuasive," not "partially persuasive." And the RFC should thus incorporate Galloway's findings that he had limitations in retaining and following instructions and tolerating the stress of daily work.

A review of the ALJ's decision shows the evidence that differed from some of Galloway's conclusions. The state agency consultant determined that Patrick could understand, follow, and retain simple instructions and complete a normal workweek. Tr. at 30, 81. Records reflected intact memory, normal and appropriate mood, normal judgment, linear and logical thought processes, and no trouble sustaining attention. Tr. at 28, 30.

Galloway also found that Patrick would have no difficulties relating to others. But the ALJ found he had moderate limitations in this area, noting his anxiety and reports that he had issues with being around groups. Tr. at 24. Patrick's history of substance use, and racing thoughts also supported a conclusion that he had some limitation in this domain. Tr. at 30.

Because the ALJ did not fully endorse Galloway's opinion, there was no obligation that he include all of her assessed restrictions in the RFC. *See Shannon H.* v. *O'Malley*, No. 3:23-CV-460, 2024 WL 4326818, at *4 (E.D. Va. Sept. 27, 2024) (citing *Burns* v. *Kijakazi*, 5:21-CV-00179, 2023 WL 2061248, at *3 (W.D.N.C Feb 16, 2023) (holding that there is no authority "requiring an ALJ to adopt all limitations included in an opinion the ALJ has found to be partially persuasive, or to explain the decision not to adopt those limitations.").[6]

---

[6] Nor is an ALJ obligated to adopt all the finding in a medical opinion he deems persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (noting that an ALJ need not defer to any medical opinion or prior administrative finding); *Turner* v. *Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) ("ALJs are not required to accept all components of . . . a claimant's limitations just because the ALJ finds them to be generally persuasive.")

### b. Vagueness

Patrick also takes issue with the ALJ's characterization of Galloway's conclusions as "vague" when she stated that he "would have difficulty" in certain areas. He claims that vagueness is not a reasonable basis to find a medical opinion unpersuasive.

Again, Patrick's argument lacks merit. A medical opinion that does not quantify the limitations assessed or define certain terms may be characterized as vague. *See Prince* v. *Kijakazi*, No. 5:22-CV-00159-M, 2023 WL 2620914, at *5 (E.D.N.C. Mar. 7, 2023), *adopted by* 2023 WL 2614525 (E.D.N.C. Mar. 23, 2023); *Williams* v. *Saul*, No. 3:18-CV-564, 2019 WL 3729016, at *13 (E.D. Va. July 22, 2019), *adopted by* 2019 WL 3728269 (E.D. Va. Aug. 7, 2019). An opinion which is vague precludes the ALJ from articulating how a limitation would be supported by and consistent in the record. *See Angela C.* v. *Comm'r, Soc. Sec.*, No. 20-CV-3069, 2021 WL 5178458, at *3 (D. Md. Nov. 8, 2021).

An ALJ must explain what parts of the medical opinion he found vague. *Woods* v. *Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018) (citing *Monroe* v. *Colvin*, 826 F.3d 176, 190 (4th Cir. 2016)). Where an ALJ identifies how a medical opinion is unclear or uncertain, courts have upheld and ALJ's decision to discount a medical opinion on vagueness grounds. *See Betty C.* v. *Comm'r, Soc. Sec. Admin.*, No. 1:23-CV-00246, 2023 WL 7386206, at *5 (D. Md. Nov. 8, 2023) (finding ALJ's conclusion that a medical opinion, which noted that claimant had difficulty with manipulations and concentration, was vague and thus unpersuasive was a sufficient reason to assign the opinion limited weight); *Pierce* v. *Kijakazi*, No. 2:20-CV-53-D, 2022 WL 495294, at

---

(citing *Thomas* v. *Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)). But "an ALJ cannot implicitly reject portions of a doctor's opinion [that the ALJ found persuasive] that are inconsistent with her RFC" absent adequate explanation of her reasoning. *Gillikin v. Bisignano*, No. 4:24-CV-00132-FL, 2025 WL 2116366, at *8 (E.D.N.C. July 3, 2025) (quoting *Adams v. Comm'r of Soc. Sec.*, No. 3:20-CV-00224-RJC, 2022 WL 634213, at *3 (W.D.N.C. Mar. 3, 2022)), adopted *by* 2025 WL 2111064 (E.D.N.C. July 28, 2025).

12

*4 (E.D.N.C. Jan. 14, 2022) (finding no error in the ALJ's consideration of medical opinion as mostly persuasive, given its supportability and consistency, but also vague because it did not define what was meant by a "moderate" limitation), *adopted by* 2022 WL 489990 (E.D.N.C. Feb. 17, 2022); *Edwards* v. *Saul*, No. 1:20-CV-2280, 2021 WL 210852, at *14 (D.S.C. Jan. 20, 2021) (concluding that the ALJ's reasoning was sound when he found unpersuasive a medical opinion "was vague and lacked a specific function-by-function analysis"); *Robertson* v. *Saul*, No. 5:18-CV-454-D, 2019 WL 7585180, at *11 (E.D.N.C. Dec. 19, 2019) ("Vagueness is a proper ground for limiting the weight given medical source opinions."), *adopted by* 2020 WL 241552 (E.D.N.C. Jan. 14, 2020); *Williams,* 2019 WL 3729016, at *13 (holding that the ALJ sufficiently explained vagueness by finding that the doctor failed to define certain terms); *see also Samuel P.* v. *Comm'r of Soc. Sec.*, No. 20–5881, 2021 WL 5769404, at *6 (W.D. Wash. Dec. 6, 2021) ("[A] finding that a medical opinion does not contain specific functional limitations, or is otherwise too vague to be useful in making a determination, can serve as a valid reason for discounting that opinion.") (citing *Meanel* v. *Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)). And courts in this Circuit have found no error where an ALJ characterizes a medical opinion noting a claimant's "difficulty" in certain as vague. *Williams* 2019 WL 3729016, at *13 (citations omitted).

Here, the ALJ pointed out the vagueness of Galloway's opinion was a conclusion that Patrick "would have difficultly" with some activities related to mental functioning. Tr. at 31. It is unclear what functional limitations resulted from his difficulties in retaining and following directions or tolerating the stress of daily work. So the ALJ's citing the opinion's vagueness was a proper basis to discount Galloway's assessment.

In sum, the court finds no error with the ALJ's consideration of Galloway's opinion.

### 2. Dupree

Dupree concluded that Patrick had moderate limitations in performing postural and manipulative activities. Tr. at 29. And he required an assistive device to ambulate. *Id.*

The ALJ found this assessment partially persuasive. *Id.* Examination showing his left femur fracture, brain hemorrhage, and gait instability supported Dupree's conclusions. *Id.* And her opinion tracked the state agency consultant's findings that noted Patrick's degenerative disc disease and chronic pain, as well as tenderness and reduced range of motion. Tr. at 29–30. But the ALJ also remarked that records showed that Patrick displayed a normal gait and did not require an assistive device. Tr. at 28, 30. And he observed that Dupree's opinion was somewhat vague because it did not identify specific limitations resulting from Patrick's impairments. Tr. at 30.

Patrick claims that the ALJ erred by failing to identify what evidence detracted from the postural and manipulative limitations Dupree found. The Commissioner asserts that the RFC is not necessarily inconsistent with Dupree's conclusions in these functional areas. It found that Patrick was limited to frequent manipulations and only occasional postural movements, with no climbing of ladders, ropes, or scaffolds. Tr. at 25–26. These may reflect moderate limitations as Dupree determined. *See Linda S.* v. *Comm'r of Soc. Sec.*, No. 5:18-CV-726, 2019 WL 3387993, at *7 (N.D.N.Y. July 26, 2019) (noting that moderate manipulative [and postural?] limitations are consistent with light work).

The ALJ pointed out that Dupree's opinion was vague in that it did not assess specific limitations. Tr. at 30. To the extent Dupree found that Patrick had limitations in manipulations and postural movements, but did not quantify them or otherwise specify how the restrictions limited him, her conclusions do not establish that Patrick is more limited than the ALJ determined. So the court cannot conclude that the RFC conflicts with her assessment.

14

What's more, given that he found her opinion only partially persuasive, the ALJ had no obligation to adopt all of Dupree's findings even they diverged from the RFC determination. *See Burns,* 2023 WL 2061248, at *3. And Patrick has identified no evidence supporting greater restriction on manipulations and postural movements that the ALJ failed to consider.

In sum, Patrick has failed to establish that the ALJ erred in considering Dupree's opinion. *See Clayton* v. *Kijakazi,* No. 5:22-CV-190-RJ, 2023 WL 5995498, at *10–11 (E.D.N.C. Sept. 15, 2023) (finding no error in ALJ's evaluation of medical opinions that assessed moderate limitations in postural movements and moderate to severe limitations in manipulations as vague but RFC nonetheless limited these activities allowing claimant to frequently push, pull, and reach overhead with his bilateral upper extremities and occasionally finger and feel with his non-dominant left upper extremity, as well as frequent stooping on occasional climbing of ladders, ropes, and scaffolds). So the court denies his claim on this issue.

### D.  Impairment Severity

Patrick also argues that the ALJ erred in failing to find that his diplopia was a severe impairment at step two. But the Commissioner contends, and the court agrees, that the record supports the ALJ's conclusion that this is a non-severe impairment.

As noted above, at the second step of the sequential evaluation process, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. § 404.1522(a); SSR 96–3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do physical or mental basic work activities." SSR 96–3p, 1996 WL 374181, at *1 (citing SSR 85–28, 1985 WL 56856).

15

Basic work activities include physical capacities as well as those for mental abilities. Basic mental work activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id*.

A plaintiff bears the burden of proving severity at step two. *Hunter* v. *Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). This is done by producing medical evidence establishing the condition and its effect on the claimant's ability to work. *Williamson* v. *Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, she finds that the claimant is not disabled, and the sequential process ends at step two. But if the claimant has at least one impairment found severe, the process moves on to the third step. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen* v. *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen* v. *Yuckert*, 482 U.S. 137, 153–54 (1987)); *see also Felton-Miller* v. *Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

"[A]n error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps." *Jones* v. *Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considered that impairment in later steps) (citations omitted); *see also Shinseki* v. *Sanders*, 556 U.S. 396, 407 (2009); *Garner* v. *Astrue*, 436 F. App'x 224, 225, n* (4th Cir. 2011).

An ALJ's omission of a severe impairment at step two does not, without more, require remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain* v. *Colvin*, No. 1:12-CV-1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014); *Lori A.J.* v. *Kijakazi*, No. 2:22-CV-131, 2023 WL 3069394, at *6 (E.D. Va. Apr. 5, 2023) ("[A]n ALJ is not required to discuss non-severe impairments in the RFC analysis so long as [he] considered them in the decision."), *adopted by*, 2023 WL 3060789 (E.D. Va. Apr. 24, 2023); *Thomas* v. *Comm'r, Soc. Sec. Admin.*, No. 11-CV-3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (if the ALJ discusses and considers the non-severe impairment at later steps, there is no prejudice to the claimant).

But a "[f]ailure by the ALJ to consider a claimant's non-severe impairments at subsequent steps of the RFC analysis requires remand." *Matthew O.* v. *O'Malley*, No. 3:23-CV-00008, 2024 WL 566553, at *10 (W.D. Va. Feb. 9, 2024) (quoting *Janet L.* v. *Saul,* No. 19–2544, 2021 WL 1733469, at *8 (D. Md. Apr. 30, 2021)); *see also Cynthia Ann M.* v. *Comm'r of Soc. Sec. Admin.*, No. 8:22-CV-1051, 2023 WL 1482737, at *10–12 (D.S.C. Jan. 17, 2023) (determining that because the ALJ did not consider the plaintiff's non-severe physical impairments after step two, the ALJ's decision was not supported by substantial evidence), *adopted sub nom., Moore v. Comm'r of Soc. Sec. Admin*, 2023 WL 1481064 (D.S.C. Feb. 1, 2023).

In considering an alleged error at step two, the court also considers the ALJ's explanation and discussion throughout the sequential analysis. Here, the ALJ found that Patrick had several severe impairments. Tr. at 21. Other conditions, including diplopia, were non-severe. Tr. at 21–22. Under the Regulations, the ALJ considered his medically-determinable conditions at the later steps of the sequential evaluations. *See* 20 C.F.R. § 404.1545(a)(2) (ALJ considers both severe and

non-severe impairments when formulating the RFC). The ALJ noted that he was required to consider all of Patrick's impairments, both severe and non-severe, in determining his RFC. Tr. at 20. And the ALJ stated that he considered the record and all of Patrick's symptoms. Tr. at 25–26.

Patrick claims that he has experienced diplopia since his 2022 accident. The ALJ noted his 20/20 corrected visual acuity and normal fields of vision bilaterally in determining that this was a non-severe impairment. Tr. at 21–22. But Patrick contends that visual acuity does not address double vision.

Yet even setting aside his visual acuity, the evidence does not establish that Patrick's diplopia limits his ability to perform basic work activities. At the October 2022 consultative examination, which noted Patrick's complaints of blurry and double vision. Tr. at 526. But the examiner concluded it caused no visual limitations. Tr. at 529.

An ophthalmology evaluation the next month found full visual field in both eyes with 20/20 corrected vision. Tr. at 535. The ophthalmologist assessed sudden onset diplopia, which prisms would improve. *Id.* The provider recommended Patrick wait more than six months before having prisms prescribed. *Id.* The ophthalmologist did not opine on limitations that resulted from the condition. Tr. at 31. And as the Commissioner notes, there is no evidence that Patrick sought follow-up treatment for his vision.

What's more, the state agency consultant concluded that Patrick had no visual limitations. Tr. at 79. This tracks the findings of the consultative examiner, who also determined that he had no vision restrictions. Tr. at 529.

At the hearing, Patrick was asked about the ongoing problems he had since his accident a year earlier. Tr. at 45. Patrick mentioned pain in his back, shoulders, and lower left extremity

which limited his ability to stand, walk, lift, and carry. Tr. at 45–47. He also noted that he has difficulty breathing, becoming short of breath when he talks, or the weather is warm. Tr. at 46–47.

When asked about headaches, Patrick stated that he could not see when he was discharged from the hospital. Tr. at 54. He had double vision, which caused headaches. *Id.* But he claimed that his "eyes are visually sort of coming back together and getting better and better every time" so the headaches were less frequent. *Id.*

So the record shows that Patrick noted improvement in his vision, and he did not pursue additional treatment of this condition after November 2022. And medical opinions from the consultative examiner and the state agency reviewer both determined that his diplopia caused no visual limitations. The evidence thus supports the ALJ's finding that this condition was not a severe impairment. So the court rejects Patrick's claim on this issue.

### E.    Residual Functional Capacity

Patrick asserts that the ALJ erred in determining his residual functional capacity (RFC) because it fails to account for hi limitations in vision and adapting or managing himself. The Commissioner maintains that the evidence does not support additional restrictions. The court finds that Patrick has failed to show he is more limited than the ALJ determined.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments regardless of whether any such impairment, if considered

19

separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); see also *Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how

20

the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

The ALJ found that Patrick could perform light work with postural, manipulative, environmental, and nonexertional limitations. Tr. at 25–26.

### 1. Adapting or Managing Oneself

This mental functional domain considers one's "abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(4). These competencies are shown by responding to demands, adapting to changes, managing symptoms, setting goals, making plans independently of others, maintaining personal hygiene and attire, and awareness of, and precautions for, normal hazards. *Id.*

As with other Paragraph B domains, the ALJ found Patrick had no more than moderate limitations in this area. Tr. at 25. The ALJ pointed out that he experienced anxiety and had problems with alcohol and substance use. *Id.* But records showed average motor activity and generally normal mood and affect. *Id.* And his niece stated that he was "good" at handling changes and dealt "very well" with stress. Tr. at 25, 293.

To begin, there is no "categorical rule" that an ALJ's finding of a moderate impairment in a Paragraph B area requires a corresponding "limitation in the RFC." *Shinaberry* v. *Saul*, 952 F.3d 113, 121 (4th Cir. 2020). For instance, where an ALJ determines that a moderate restriction has no effect on a claimant's ability to work, it may be appropriate to omit a limitation from the RFC, as long as the ALJ sufficiently explains that analysis. *Mascio,* 780 F.3d at 638.[7]

---

[7] Patrick's attempt to extend *Mascio's* holding, which dealt with moderate limitations in concentration, persistence, and pace, to another Paragraph B domain, adapting or managing oneself, is unavailing. The directives of *Mascio* do not necessarily apply beyond the mental functioning domain it addressed—concentration, persistence, and pace—to the other functioning areas. *See Rhonda P.* v. *O'Malley*, No. 24-CV-0178, 2024 WL 4493413, at *3 n.3 (D. Md. Oct. 15, 2024) (citing *Kimberly B.C.* v. *Kijakazi*, No. 22-617, 2023 WL 4974033, at *5 (M.D.N.C. Aug. 3, 2023)).

The RFC includes restrictions that are relevant to this domain of mental functioning. It limits Patrick to simple, routine, repetitive tasks, in a low-stress work setting with limited social interactions and only occasional changes in his work setting. Tr. at 25–26. These limitations reflect difficulty in adapting or managing oneself. *See Keisha B.* v. *King,* No. 4:24-CV-182, 2025 WL 325602, at *5 (D.S.C. Jan. 29, 2025) (finding that ALJ accommodated claimant's moderate limitations in adapting or managing herself by restricting her interactions with others, limiting her to work that involved simple one and two-step instructions, and allowed only occasional changes in setting and routine); *Akinyele C.* v. *Kijakazi*, No. 4:22-CV-62, 2023 WL 3539431, at *3 (E.D. Va. May 18, 2023) (determining that RFC for "simple, repetitive nonproduction pace tasks, with occasional interaction with coworkers, supervisors and the public[]" reflected claimant's moderate limitation in his ability to adapt or manage himself); *Senora M.* v. *Kijakazi*, No. 21-CV-857, 2022 WL 1714883, at *3 (D. Md. Mar. 4, 2022) (finding that simple, routine, repetitive tasks accounted for claimant's moderate limitations in adapting or managing herself); *Nelson* v. *Saul*, No. 4:18-CV-163-D, 2019 WL 4748028, at *6 (E.D.N.C. Aug. 29, 2019) (finding that occasional changes in the work setting, no interaction with the public, and occasional interaction with co-workers addressed claimant's moderate limitation in adapting or managing herself), *adopted by* 2019 WL 4747048 (E.D.N.C. Sept. 27, 2019); *Rayonda P.* v. *Comm'r, Soc. Sec. Admin.*, No. 7:18-CV-190, 2019 WL 3242069, at *5 (W.D. Va. July 18, 2019) (holding that the ALJ adequately accounted for moderate limitations in adapting and managing oneself where RFC limited the claimant to occasional changes in the work setting and restricted interactions).

So the RFC sets out restrictions that coincide with moderate limitations in the ability to adapt or manage oneself. Limiting his interactions, changes, and task complexity would account for the trouble he experiences with anxiety. Patrick identifies no other restrictions resulting from

difficulties in this area of mental functioning which the evidence supported but the RFC excluded. So Patrick's argument on this issue lacks merit.

### 2. Visual Limitations

Patrick contends that the RFC disregards his visual limitations. Having found that Patrick does not have a severe impairment with his vision means that his vision did not limit his ability to perform basic work activities. The consultative examiner's assessment and the opinion of the state agency consultant, both of whom concluded that Patrick had no visual limitations, constitute substantial evidence supporting the RFC determination that included no visual restrictions. Tr. at 79, 529. So the RFC required no visual limitations. And Patrick's argument to the contrary lacks merit.

### F. Step Five

Patrick also challenges the step five finding that identified other work he can perform, claiming it conflicts with his RFC. The Commissioner claims, and the court agrees, that there is no conflict.

As noted above, while a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant can perform is available. *Pass*, 65 F.3d at 1203 (citing *Hunter* v. *Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids) or by calling a vocational expert to testify." *Aistrop* v. *Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence on the availability of jobs the claimant can perform. *Grant* v. *Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker*, 889 F.2d at 49; *Hammond* v. *Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook* v. *Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

The Regulations permit testimony from a vocational expert to determine "whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used[.]" 20 C.F.R. §§ 404.1566(e), 416.966(e). For a vocational expert's testimony to be relevant, an ALJ's hypothetical question must represent all of a claimant's substantial impairments. *Walker*, 889 F.2d at 50; *Burnette* v. *Astrue*, No. 2:08-cv-0009-FL, 2009 WL 863372, at *4 (E.D.N.C. Mar. 24, 2009) (relevant hypothetical question should adequately reflect claimant's RFC and fairly set out a claimant's limitations). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. *See Johnson*, 434 F.3d at 659 (citing *Walker*, 889 F.2d at 50).

Before relying on a VE's testimony an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT), . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00–4p, 2000 WL 1898704 (Dec. 4,

2000). "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." *Id.* "When there is an apparent unresolved conflict between VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . to support a determination or decision about whether the claimant is disabled." *Id.* "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.*

The Fourth Circuit has interpreted SSR 00–4p as placing an "affirmative duty" on the ALJ to independently "identify conflicts between the [VE's] testimony and the [DOT]." *Pearson* v. *Colvin*, 810 F.3d 204, 208–09 (4th Cir. 2015). "An ALJ has not fully developed the record if it contains an unresolved conflict between the [VE's] testimony and the [DOT]." *Id.* at 210.

The three positions the VE identified at step five as suitable for Patrick's RFC—marker, routing clerk, and router—have a Reasoning Level of 2.[8] Patrick contends that this work exceeds his abilities because the RFC limits him to "simple, routine, repetitive tasks in a low-stress work setting." Tr. at 25.

An apparent conflict exists between an RFC limitation to "short, simple instructions" and a need to carry out "detailed but involved . . . instructions" as found in jobs requiring a reasoning level of two. *Thomas* v. *Berryhill,* 916 F.3d 307, 313 (4th Cir. 2019), *as amended* (Feb. 22, 2019). But there is no conflict between a limitation to "simple, routine, repetitive tasks" and reasoning

---

[8] The DOT Reasoning Level functions are part of the General Educational Development ("GED"), which range from Level 1 (lowest reasoning ability) to Level 6 (highest reasoning ability). Reasoning level 1 involves "[a]pply[ing] commonsense understanding to carry out simple one- or two-step instructions." A reasoning level of 2 suggests that the job requires the person to be able to, "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

level two occupations. *Lawrence* v. *Saul,* 941 F.3d 140, 144 (4th Cir. 2019); *Katerina M.L.* v. *O'Malley*, No. 1:22-CV-932, 2024 WL 110682, at *5 (M.D.N.C. Jan. 10, 2024).

A limitation to short instructions contradicts work that involves reasoning level two work, which involved detailed instructions. *Lawrence*, 941 F.3d at 143. But Patrick's RFC contains no such restriction. Tr. at 25–26. Instead, it limited him to simple, routine, repetitive tasks, in a low-stress environment. *Id.* This condition is materially different from restricting a claimant to short tasks, instructions, or decisions. *Lawrence*, 941 F.3d at 143; *Dunivant* v. *Saul*, No. 1:19-CV-923, 2021 WL 620711, at * 4 (W.D.N.C. Feb. 17, 2021) (noting that *Lawrence* clarified that the conflict stems from "short" instructions rather than the simplicity of them).

Finding no conflict between a Patrick's RFC and the jobs identified at step five, the ALJ was entitled to rely on the VE's testimony of other work suitable for Patrick.

The Commissioner met his burden at step five by identifying other work that Patrick could perform. So the court denies his claim on this issue.

### III. Conclusion

For these reasons, the court grants Bisignano's request for relief (D.E. 14), denies Patrick's request for relief (D.E. 12), and affirms the Commissioner's determination.

The Clerk shall close this case.

Dated:  September 12, 2025

_Robert T Numbers II_
_____
Robert T. Numbers, II
United States Magistrate Judge

26